# EXHIBIT A





EXPERTS FOCUSED ON YOUR PROTECTION.  WE DELIVER.



July 3, 2019
Cruz Parsons
Aon Risk Insurance Services West, Inc.
707 Wilshire Boulevard, Suite 2600 Suite 6000
Los Angeles, CA 90017

Re:     Financial Business Group Holdings
        Policy # BCCR-45003631-20

Dear Cruz,

Thank you for insuring your account with Berkley Crime.  Attached please find a copy of the policy for the above referenced account.  In the event of loss, please contact:

    Ms. Megan Manogue
    Assistant Vice President, Chief Claims Officer
    849 Fairmount Avenue, Suite 301
    Towson, Maryland 21286
    Phone (toll free): (866) 539-3995, Option 3
    Fax (toll free): (866) 915-7879
    E-Mail:  claims@berkleycrime.com

Please feel free to contact me with any additional questions.

Sincerely,

Katie Messenger

CVilandre@BerkleyCrime.com



**Underwritten By**
**BERKLEY INSURANCE COMPANY**

**PRODUCER**
Cruz Parsons
Aon Risk Insurance Services West, Inc.
707 Wilshire Boulevard, Suite 2600 Suite 6000
Los Angeles, CA 90017
(213) 630-2038

*Administrative Office:*
*475 Steamboat Road*
*Greenwich, CT 06830*

*Issuing Office:*
*29 South Main Street, Suite 308*
*West Hartford, CT 06107*

## COMMERCIAL CRIME POLICY DECLARATIONS

In Return for the Payment of the Premium, and Subject to all the Terms and Conditions of This Policy, We Agree With You to Provide the Insurance as Stated in this Policy.
Coverage Is Written:

☑ Primary          ☐ Excess          ☐ Coindemnity          ☐ Concurrent

| **POLICY NUMBER** | BCCR-45003631-20 | **PRIOR POLICY NUMBER** | N/A |
|---|---|---|---|
| **NAMED INSURED** | Financial Business Group Holdings | | |

**MAILING ADDRESS**     1932 E Deere Ave, Ste 150
                        Santa Ana, CA 92705

**POLICY PERIOD**       7/01/2019 to 7/01/2020
                        (12:01 A.M. at your Mailing Address shown above)

### INSURING AGREEMENTS, LIMITS OF INSURANCE AND DEDUCTIBLE:

| | Insuring Agreements | Limit of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|---|
| 1. | Employee Theft | $5,000,000 | $75,000 |
| 2. | Forgery Or Alteration | $5,000,000 | $75,000 |
| | – Credit, Debit, Or Charge Cards | $1,000,000 | $1,000 |
| 3. | Inside The Premises - Theft Of Money And Securities | $5,000,000 | $75,000 |
| 4. | Inside The Premises - Robbery Or Safe Burglary Of Other Property | $5,000,000 | $75,000 |
| 5. | Outside The Premises | $5,000,000 | $75,000 |
| 6. | Computer And Funds Transfer Fraud | $5,000,000 | $75,000 |
| 7. | Money Orders And Counterfeit Money | $5,000,000 | $1,000 |

Coverage is provided only if an amount is shown opposite an Insuring Agreement. If the amount is left blank or "Not Covered" is inserted, such Insuring Agreement and any other reference thereto in this policy is entirely deleted.

| If Added by Endorsement: | | |
|---|---|---|
| Insuring Agreements | Limit of Insurance Per Occurrence | Deductible Amount Per Occurrence |
| Clients' Property | $5,000,000 | $75,000 |
| Corporate Deception Fraud | $1,000,000 | $75,000 |
| Destruction Of Electronic Data Or Computer Programs | $500,000 | $75,000 |
| | | |

| Forms and Endorsements Forming Part of this Policy When Issued: | |
|---|---|
| Form Number and Edition Date | Description of Form or Endorsement: |
| BCR WDC 01 01 15 | Berkley Crime We Deliver Cover Page |
| BCR COV 01 08 18 | Berkley Crime Cover Letter |
| BCR DEC 01 10 16 | Commercial Crime Policy Declaration |
| CR 00 22 11 15 | Commercial Crime Policy (Discovery Form) |
| CR 04 01 08 13 | Clients' Property |
| CR 20 09 08 07 | Amend Territorial Limits |
| CR 04 13 08 13 | Destruction of Electronic Data or Computer Programs |
| CR 20 04 10 10 | Change Extended Period to Discover Loss |
| CR 20 26 08 07 | Provide Automatic Coverage for Acquired Entities |
| CR 25 08 10 10 | Include Specified Non-Compensated Officers As Employees |
| CR 25 20 10 10 | Add Credit, Debit or Charge Card Forgery Endorsement |
| CR 25 41 10 10 | Include Designated Persons or Classes of Persons as Employees |
| BCR ISO 01 10 16 | Omnibus Named Insured Endorsement |
| BCR ISO 03 10 16 | Exclude Trading Loss with Carve Back for Employee Dishonesty |
| BCR ISO 04 10 16 | Knowledge of Prior Theft Endorsement |
| BCR ISO 05 10 16 | Inventory Shortage Clarification Endorsement |
| BCR ISO 06 10 16 | Loss Reporting Threshold Endorsement |
| BCR ISO 07 10 16 | Amend Notice of Cancellation Endorsement |
| BCR ISO 08 10 16 | Amend Termination as to Any Employee Endorsement |
| BCR ISO 09 10 16 | Amend Definition of Discover Endorsement |
| BCR ISO 10 10 16 | Amend Definition of Securities Endorsement |
| BCR ISO 11 10 16 | Amend Definition of Employee for Terminated Employees Endorsement |
| BCR ISO 12 10 16 | Tax Compensation Coverage Endorsement |
| BCR ISO 13 10 16 | Investigative Costs Endorsement |
| BCR ISO 14 10 16 | Proof of Loss Endorsement |
| BCR ISO 20 10 16 | Corporate Deception Fraud Endorsement |
| BCR CGV 24 01 15 | No Claims Bonus Endorsement |
| CR 02 49 09 12 | California Changes |
| IL P 001 01 04 | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |
| CR 25 47 09 17 | U.S. Department of Labor - ERISA Plan Coverage Amendments |
| BCR WDB 01 01 15 | Berkley Crime We Deliver Back Page |

Premium: $18,732

| Cancellation of Prior Insurance Issued by Us: |
|---|
| By acceptance of this Policy you give us notice canceling prior policy Numbers: N/A |
| the cancellation to be effective at the time this Policy becomes effective. |

| Countersignature of Authorized Representative (Where Required) |
|---|
| Name: |
| Title: |
| Signature: |
| Date: |

BCR DEC 01 10 16

IN WITNESS WHEREOF, Berkley Insurance Company designated herein has executed and attested these presents.

Ira S. Lederman
Director, Senior Vice President and Secretary

W. Robert Berkley, Jr.
Director and President

CRIME AND FIDELITY
CR 00 22 11 15

# COMMERCIAL CRIME POLICY
# (DISCOVERY FORM)

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is or is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit Of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.j.:**

### 1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

### 2. Forgery Or Alteration

**a.** We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

**(1)** Made or drawn by or drawn upon you; or

**(2)** Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

**b.** If you are sued for refusing to pay any instrument covered in Paragraph **2.a.,** on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay for such legal expenses is in addition to the Limit of Insurance applicable to this Insuring Agreement.

### 3. Inside The Premises – Theft Of Money And Securities

We will pay for:

**a.** Loss of "money" and "securities" inside the "premises" or "financial institution premises":

**(1)** Resulting directly from "theft" committed by a person present inside such "premises" or "financial institution premises"; or

**(2)** Resulting directly from disappearance or destruction.

**b.** Loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

**c.** Loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of, or unlawful entry into, those containers.

### 4. Inside The Premises – Robbery Or Safe Burglary Of Other Property

We will pay for:

**a.** Loss of or damage to "other property":

**(1)** Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

**(2)** Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

© Insurance Services Office, Inc., 2015

**b.** Loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

**c.** Loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5. Outside The Premises**

We will pay for:

**a.** Loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

**b.** Loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6. Computer And Funds Transfer Fraud**

**a.** We will pay for:

(1) Loss resulting directly from a fraudulent:

(a) Entry of "electronic data" or "computer program" into; or

(b) Change of "electronic data" or "computer program" within;

any "computer system" owned, leased or operated by you, provided the fraudulent entry or fraudulent change causes, with regard to Paragraphs **6.a.(1)(a)** and **6.a.(1)(b):**

(i) "Money", "securities" or "other property" to be transferred, paid or delivered; or

(ii) Your account at a "financial institution" to be debited or deleted.

(2) Loss resulting directly from a "fraudulent instruction" directing a "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that account.

**b.** As used in Paragraph **6.a.(1),** fraudulent entry or fraudulent change of "electronic data" or "computer program" shall include such entry or change made by an "employee" acting, in good faith, upon a "fraudulent instruction" received from a computer software contractor who has a written agreement with you to design, implement or service "computer programs" for a "computer system" covered under this Insuring Agreement.

**7. Money Orders And Counterfeit Money**

We will pay for loss resulting directly from your having, in good faith, accepted in exchange for merchandise, "money" or services:

**a.** Money orders issued by any post office, express company or "financial institution" that are not paid upon presentation; or

**b.** "Counterfeit money" that is acquired during the regular course of business.

**B. Limit Of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit Of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or coverages.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D. Exclusions**

**1.** This Policy does not cover:

**a. Acts Committed By You, Your Partners Or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

(1) You; or

(2) Any of your partners or "members";

whether acting alone or in collusion with other persons.

 © Insurance Services Office, Inc., 2015

**b. Acts Committed By Your Employees Learned Of By You Prior To The Policy Period**

Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this Policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of such "theft" or dishonest act prior to the Policy Period shown in the Declarations.

**c. Acts Committed By Your Employees, Managers, Directors, Trustees Or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

**(1)** Whether acting alone or in collusion with other persons; or

**(2)** While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.**

**d. Confidential Or Personal Information**

Loss resulting from:

**(1)** The disclosure or use of another person's or organization's confidential or personal information; or

**(2)** The disclosure of your confidential or personal information. However, this Paragraph **1.d.(2)** does not apply to loss otherwise covered under this Policy that results directly from the use of your confidential or personal information.

For the purposes of this exclusion, confidential or personal information includes, but is not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

**e. Data Security Breach**

Fees, costs, fines, penalties and other expenses incurred by you which are related to the access to or disclosure of another person's or organization's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

**f. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**g. Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this Policy including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property";

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this Policy; or

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this Policy.

**h. Legal Fees, Costs And Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **A.2.**

**i. Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**j. Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

© Insurance Services Office, Inc., 2015

**k. Virtual Currency**

Loss involving virtual currency of any kind, by whatever name known, whether actual or fictitious including, but not limited to, digital currency, crypto currency or any other type of electronic currency.

**l. War And Military Action**

Loss or damage resulting from:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** Insuring Agreement **A.1.** does not cover:

**a. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**b. Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**c. Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

**3.** Insuring Agreements **A.3., A.4.** and **A.5.** do not cover:

**a. Accounting Or Arithmetical Errors Or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**b. Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c. Fire**

Loss or damage resulting from fire, however caused, except:

**(1)** Loss of or damage to "money" and "securities"; and

**(2)** Loss from damage to a safe or vault.

**d. Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e. Motor Vehicles Or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers or semitrailers or equipment and accessories attached to them.

**f. Transfer Or Surrender Of Property**

**(1)** Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "financial institution premises":

**(a)** On the basis of unauthorized instructions; or

**(b)** As a result of a threat including, but not limited to:

**(i)** A threat to do bodily harm to any person;

**(ii)** A threat to do damage to any property;

**(iii)** A threat to introduce a denial of service attack into any "computer system";

**(iv)** A threat to introduce a virus or other malicious instruction into any "computer system" which is designed to damage, destroy or corrupt "electronic data" or "computer programs" stored within the "computer system";

**(v)** A threat to contaminate, pollute or render substandard your products or goods; or

**(vi)** A threat to disseminate, divulge or utilize:

**i.** Your confidential information;

**ii.** Confidential or personal information of another person or organization; or

**iii.** Weaknesses in the source code within any "computer system".

**(2)** However, this exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

**(a)** Had no knowledge of any threat at the time the conveyance began; or

**(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g. Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h. Voluntary Parting Of Title To Or Possession Of Property**

Loss resulting from your, or anyone else acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.** Insuring Agreement **A.6.** does not cover:

**a. Authorized Access**

Loss resulting from a fraudulent:

**(1)** Entry of "electronic data" or "computer program" into; or

**(2)** Change of "electronic data" or "computer program" within;

any "computer system" owned, leased or operated by you by a person or organization with authorized access to that "computer system", except when covered under Insuring Agreement **A.6.b.**

**b. Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**c. Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**d. Fraudulent Instructions**

Loss resulting from an "employee" or "financial institution" acting upon any instruction to:

**(1)** Transfer, pay or deliver "money", "securities" or "other property"; or

**(2)** Debit or delete your account;

which instruction proves to be fraudulent, except when covered under Insuring Agreement **A.6.a.(2)** or **A.6.b.**

**e. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

**E. Conditions**

**1. Conditions Applicable To All Insuring Agreements**

**a. Additional Premises Or Employees**

If, while this Policy is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this Policy. Notice to us of an increase in the number of "premises" or "employees" is not required, and no additional premium will be charged for the remainder of the Policy Period shown in the Declarations.

**b. Cancellation Of Policy**

**(1)** The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

**(2)** We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for any other reason.

**(3)** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**(4)** Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

**(5)** If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**(6)** If notice is mailed, proof of mailing will be sufficient proof of notice.

**c. Changes**

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

**d. Concealment, Misrepresentation Or Fraud**

This Policy is void in any case of fraud by you as it relates to this Policy at any time. It is also void if you or any other Insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**(1)** This Policy;

**(2)** The property covered under this Policy;

**(3)** Your interest in the property covered under this Policy; or

**(4)** A claim under this Policy.

**e. Consolidation – Merger Or Acquisition**

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

**(1)** You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this Policy to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

**(2)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this Policy shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

**f. Cooperation**

You must cooperate with us in all matters pertaining to this Policy as stated in its terms and conditions.

**g. Duties In The Event Of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property", you must:

**(1)** Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.1.** or **A.2.**) involves a violation of law, you must also notify the local law enforcement authorities;

**(2)** Give us a detailed, sworn proof of loss within 120 days;

**(3)** Cooperate with us in the investigation and settlement of any claim;

**(4)** Produce for our examination all pertinent records;

**(5)** Submit to examination under oath at our request and give us a signed statement of your answers; and

**(6)** Secure all of your rights of recovery against any person or organization responsible for the loss and do nothing to impair those rights.

   © Insurance Services Office, Inc., 2015

**h. Employee Benefit Plans**

The "employee benefit plans" shown in the Declarations (hereafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.,** subject to the following:

**(1)** If any Plan is insured jointly with any other entity under this Policy, you or the Plan Administrator is responsible for selecting a Limit of Insurance for Insuring Agreement **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required under ERISA as if each Plan were separately insured.

**(2)** With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(3)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**(4)** If two or more Plans are insured under this Policy, any payment we make for loss:

**(a)** Sustained by two or more Plans; or

**(b)** Of commingled "money", "securities" or "other property" of two or more Plans;

resulting directly from an "occurrence", will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required under ERISA for each Plan bears to the total of those limits.

**(5)** The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any Plan.

**i. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this Policy at any time during the Policy Period shown in the Declarations and up to three years afterward.

**j. Extended Period To Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this Policy, which is "discovered" by you:

**(1)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this Policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(2)** No later than one year from the date of that cancellation with regard to any "employee benefit plan".

**k. Inspections And Surveys**

**(1)** We have the right to:

**(a)** Make inspections and surveys at any time;

**(b)** Give you reports on the conditions we find; and

**(c)** Recommend changes.

**(2)** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**(a)** Are safe or healthful; or

**(b)** Comply with laws, regulations, codes or standards.

**(3)** Paragraphs **k.(1)** and **k.(2)** apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**l. Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this Policy. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured, or partner, "member", "manager", officer, director or trustee of that Insured has knowledge of any information relevant to this Policy, that knowledge is considered knowledge of every Insured.

**(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

**(4)** If this Policy or any of its coverages are cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

**(a)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this Policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(b)** No later than one year from the date of that cancellation with regard to any "employee benefit plan".

**(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**(6)** Payment by us to the first Named Insured for loss sustained by any Insured, or payment by us to any "employee benefit plan" for loss sustained by that Plan, shall fully release us on account of such loss.

**m. Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this Policy;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within two years from the date you "discovered" the loss.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**n. Liberalization**

If we adopt any revision that would broaden the coverage under this Policy without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this Policy.

**o. Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this Policy, our obligations are limited as follows:

**(1) Primary Insurance**

When this Policy is written as primary insurance, and:

**(a)** You have other insurance subject to the same terms and conditions as this Policy, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit Of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

**(b)** You have other insurance covering the same loss other than that described in Paragraph **o.(1)(a)**, we will only pay for the amount of loss that exceeds:

**(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

**(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this Policy.

**(2) Excess Insurance**

**(a)** When this Policy is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this Policy.

**(b)** However, if loss covered under this Policy is subject to a deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

**p. Ownership Of Property; Interests Covered**

The property covered under this Policy is limited to property:

**(1)** That you own or lease;

**(2)** That is held by you in any capacity; or

**(3)** For which you are legally liable, provided you were liable for the property prior to the time the loss was sustained.

However, this Policy is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this Policy must be presented by you.

**q. Policy Bridge – Discovery Replacing Loss Sustained**

**(1)** If this Policy replaces insurance that provided you with an extended period of time after cancellation in which to discover loss and which did not terminate at the time this Policy became effective:

**(a)** We will not pay for any loss that occurred during the policy period of that prior insurance which is discovered by you during such extended period to discover loss, unless the amount of loss exceeds the Limit of Insurance and Deductible Amount of that prior insurance. In that case, we will pay for the excess loss subject to the terms and conditions of this Policy.

**(b)** However, any payment we make for the excess loss will not be greater than the difference between the Limit of Insurance and Deductible Amount of that prior insurance and the Limit Of Insurance shown in the Declarations. We will not apply the Deductible Amount shown in the Declarations to this excess loss.

**(2) Other Insurance** Condition **E.1.o.** does not apply to this condition.

**r. Premiums**

The first Named Insured shown in the Declarations:

**(1)** Is responsible for the payment of all premiums; and

**(2)** Will be the payee for any return premiums we pay.

**s. Records**

You must keep records of all property covered under this Policy so we can verify the amount of any loss.

**t. Recoveries**

**(1)** Any recoveries, whether effected before or after any payment under this Policy, whether made by us or by you, shall be applied net of the expense of such recovery:

**(a)** First, to you in satisfaction of your covered loss in excess of the amount paid under this Policy;

**(b)** Second, to us in satisfaction of amounts paid in settlement of your claim;

**(c)** Third, to you in satisfaction of any Deductible Amount; and

**(d)** Fourth, to you in satisfaction of any loss not covered under this Policy.

**(2)** Recoveries do not include any recovery:

**(a)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

**(b)** Of original "securities" after duplicates of them have been issued.

**u. Territory**

This Policy covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**v. Transfer Of Your Rights And Duties Under This Policy**

**(1)** Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

**(2)** If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**w. Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**x. Valuation – Settlement**

The value of any loss for purposes of coverage under this Policy shall be determined as follows:

**(1) Money**

Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

**(a)** At face value in the "money" issued by that country; or

**(b)** In the United States of America dollar equivalent, determined by the rate of exchange published in The Wall Street Journal on the day the loss was "discovered".

**(2) Securities**

Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

**(a)** Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

**(b)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

**(i)** Market value of the "securities" at the close of business on the day the loss was "discovered"; or

**(ii)** Limit of Insurance applicable to the "securities".

**(3) Property Other Than Money And Securities**

**(a)** Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

**(i)** The Limit of Insurance applicable to the lost or damaged property;

**(ii)** The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

**(iii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

**(b)** We will not pay on a replacement cost basis for any loss or damage to property covered under Paragraph **x.(3)(a):**

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(c)** We will, at your option, pay for loss or damage to such property:

**(i)** In the "money" of the country in which the loss or damage was sustained; or

**(ii)** In the United States of America dollar equivalent of the "money" of the country in which the loss or damage was sustained, determined by the rate of exchange published in The Wall Street Journal on the day the loss was "discovered".

**(d)** Any property that we pay for or replace becomes our property.

© Insurance Services Office, Inc., 2015

**2. Conditions Applicable To Insuring Agreement A.1.**

**a. Termination As To Any Employee**

This Insuring Agreement terminates as to any "employee":

**(1)** As soon as:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you; or

**(2)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in Territory Condition **E.1.u.** for a period of not more than 90 consecutive days.

**3. Conditions Applicable To Insuring Agreement A.2.**

**a. Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

**b. Electronic And Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**c. Proof Of Loss**

You must include with your proof of loss any instrument involved in that loss or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**d. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.u.** does not apply to Insuring Agreement **A.2.**

**4. Conditions Applicable To Insuring Agreements A.4. And A.5.**

**a. Armored Motor Vehicle Companies**

Under Insuring Agreement **A.5.,** we will only pay for the amount of loss you cannot recover:

**(1)** Under your contract with the armored motor vehicle company; and

**(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**b. Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

**(1)** Precious metals, precious or semiprecious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

**(2)** Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**5. Conditions Applicable To Insuring Agreement A.6.**

**a. Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**b. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.u.** does not apply to Insuring Agreement **A.6.**

**F. Definitions**

**1.** "Computer program" means a set of related electronic instructions, which direct the operation and function of a computer or devices connected to it, which enable the computer or devices to receive, process, store or send "electronic data".

**2.** "Computer system" means:

**a.** Computers, including Personal Digital Assistants (PDAs) and other transportable or handheld devices, electronic storage devices and related peripheral components;

**b.** Systems and applications software; and

**c.** Related communications networks;

by which "electronic data" is collected, transmitted, processed, stored or retrieved.

**3.** "Counterfeit money" means an imitation of "money" which is intended to deceive and to be taken as genuine.

**4.** "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

**5.** "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this Policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this Policy.

**6.** "Electronic data" means information, facts, images or sounds stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software) on data storage devices, including hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**7.** "Employee":

**a.** Means:

**(1)** Any natural person:

**(a)** While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";

**(b)** Whom you compensate directly by salary, wages or commissions; and

**(c)** Whom you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

**(a)** To substitute for a permanent "employee", as defined in Paragraph **7.a.(1),** who is on leave; or

**(b)** To meet seasonal or short-term workload conditions;

while that person is subject to your direction and control and performing services for you;

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary "employee" as defined in Paragraph **7.a.(2);**

**(4)** Any natural person who is:

**(a)** A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; or

**(b)** Your director or trustee while that person is engaged in handling "money", "securities" or "other property" of any "employee benefit plan";

**(5)** Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained by you as a consultant while performing services for you;

**(6)** Any natural person who is a guest student or intern pursuing studies or duties;

**(7)** Any natural person employed by an entity merged or consolidated with you prior to the effective date of this Policy; and

**(8)** Any natural person who is your "manager", director or trustee while:

**(a)** Performing acts within the scope of the usual duties of an "employee"; or

**(b)** Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

**b.** Does not mean:

Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph **7.a.**

**8.** "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and that is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

**9.** "Financial institution" means:

**a.** With regard to Insuring Agreement **A.3.:**

**(1)** A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution; or

**(2)** An insurance company.

**b.** With regard to Insuring Agreement **A.6.:**

**(1)** A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution;

**(2)** An insurance company; or

**(3)** A stock brokerage firm or investment company.

**c.** Other than Insuring Agreements **A.3.** and **A.6.,** any financial institution.

**10.** "Financial institution premises" means the interior of that portion of any building occupied by a "financial institution" as defined in Paragraph **F.9.a.**

**11.** "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**12.** "Fraudulent instruction" means:

**a.** With regard to Insuring Agreement **A.6.a.(2):**

**(1)** A computer, telefacsimile, telephone or other electronic instruction directing a "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that "transfer account", which instruction purports to have been issued by you, but which in fact was fraudulently issued by someone else without your knowledge or consent; or

**(2)** A written instruction (other than those covered under Insuring Agreement **A.2.**) issued to a "financial institution" directing the "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that "transfer account", through an electronic funds transfer system at specified times or under specified conditions, which instruction purports to have been issued by you, but which in fact was issued, forged or altered by someone else without your knowledge or consent.

**b.** With regard to Insuring Agreement **A.6.b.:**

A computer, telefacsimile, telephone or other electronic, written or voice instruction directing an "employee" to enter or change "electronic data" or "computer programs" within a "computer system" covered under the Insuring Agreement, which instruction in fact was fraudulently issued by your computer software contractor.

**13.** "Manager" means a natural person serving in a directorial capacity for a limited liability company.

**14.** "Member" means an owner of a limited liability company represented by its membership interest who, if a natural person, may also serve as a "manager".

**15.** "Messenger" means you, or your relative, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

**16.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value;

**b.** Traveler's checks and money orders held for sale to the public; and

**c.** In addition, includes:

**(1)** Under Insuring Agreements **A.1.** and **A.2.,** deposits in your account at any "financial institution"; and

**(2)** Under Insuring Agreement **A.6.,** deposits in your account at a "financial institution" as defined in Paragraph **F.9.b.**

**17.** "Occurrence" means:

**a.** Under Insuring Agreement **A.1.:**

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

**b.** Under Insuring Agreement **A.2.:**

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, before such Policy Period or both.

**c.** Under all other Insuring Agreements:

**(1)** An individual act or event;

**(2)** The combined total of all separate acts or events whether or not related; or

**(3)** A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, before such Policy Period or both.

**18.** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include "computer programs", "electronic data" or any property specifically excluded under this Policy.

**19.** "Premises" means the interior of that portion of any building you occupy in conducting your business.

**20.** "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

**a.** Caused or threatened to cause that person bodily harm; or

**b.** Committed an obviously unlawful act witnessed by that person.

**21.** "Safe burglary" means the unlawful taking of:

**a.** Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

**b.** A safe or vault from inside the "premises".

**22.** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**23.** "Theft" means the unlawful taking of property to the deprivation of the Insured.

**24.** "Transfer account" means an account maintained by you at a "financial institution" from which you can initiate the transfer, payment or delivery of "money" or "securities":

**a.** By means of computer, telefacsimile, telephone or other electronic instructions; or

**b.** By means of written instructions (other than those covered under Insuring Agreement **A.2.**) establishing the conditions under which such transfers are to be initiated by such "financial institution" through an electronic funds transfer system.

**25.** "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

**CRIME AND FIDELITY**
**CR 04 01 08 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CLIENTS' PROPERTY

This endorsement modifies insurance provided under the following:

> COMMERCIAL CRIME COVERAGE FORM
> COMMERCIAL CRIME POLICY
> EMPLOYEE THEFT AND FORGERY POLICY

With regard to this Clients' Property endorsement, the provisions of the Coverage Form or Policy to which this endorsement is attached apply, unless modified by this endorsement.

**A.** The following Insuring Agreement is added to Section **A. Insuring Agreements:**

We will pay for loss of or damage to "money", "securities" and "other property" sustained by your "client" resulting directly from "theft" committed by an identified "employee", acting alone or in collusion with other persons.

**B.** Under Section **D. Exclusions** in the Commercial Crime Coverage Form and the Commercial Crime Policy, the **Acts Committed By Your Employees, Managers, Directors, Trustees or Representatives** Exclusion does not apply to this Insuring Agreement.

**C.** Under Section **E. Conditions:**

**1.** Paragraph **(1)** of the **Duties In The Event Of Loss** Condition is replaced by the following:

**(1)** Notify us as soon as possible;

**2.** The **Ownership Of Property; Interests Covered** Condition is replaced by the following:

**Ownership Of Property; Interests Covered**

The property covered under this Insuring Agreement is limited to property:

**a.** That your "client" owns or leases; or

**b.** That your "client" holds for others in any capacity; or

**c.** For which your "client" is legally liable, provided your "client" was liable for the property prior to the time the loss was sustained.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization, including your "client". Any claim for loss that is covered under this Insuring Agreement must be presented by you.

**D.** Under Section **F. Definitions:**

**1.** The following definitions are added:

**a.** "Client" means any entity for whom you perform services under a written contract.

**b.** "Occurrence" means:

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

committed by an "employee", acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such policy period or both.

**2.** The definition of "theft" is replaced by the following:

"Theft" means the unlawful taking of property to the deprivation of your "client".

 © Insurance Services Office, Inc., 2012

POLICY NUMBER: BCCR-45003631-20

**CRIME AND FIDELITY**
**CR 20 09 08 07**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMEND TERRITORIAL LIMITS

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY

**SCHEDULE**

| Territory | |
|---|---|
| **Add** | **Delete** |
| **Worldwide** | **None** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

The Territory Condition is amended by adding or deleting the territory shown in the Schedule.

 © ISO Properties, Inc., 2006 □

**CRIME AND FIDELITY**
**CR 04 13 08 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESTRUCTION OF ELECTRONIC DATA OR COMPUTER PROGRAMS

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY

With regard to this Destruction Of Electronic Data Or Computer Programs endorsement, the provisions of the Coverage Form or Policy to which this endorsement is attached apply, unless modified by this endorsement.

**A.** The following Insuring Agreement is added to Section **A. Insuring Agreements:**

We will pay for costs that you incur to restore or replace damaged or destroyed "electronic data" or "computer programs" stored within any "computer system" owned, leased or operated by you resulting directly from:

**1.** A virus designed to damage or destroy "electronic data" or "computer programs";

**2.** Vandalism by an "employee"; or

**3.** Vandalism by a natural person who has gained unauthorized access to your "computer system";

including reasonable costs that you incur to restore your "computer system" to the level of operational capability that existed immediately before the virus or vandalism occurred.

**B.** Section **D. Exclusions:**

**1.** The following exclusions do not apply to loss covered under Paragraph **A.2.:**

**a.** The Acts Committed By Your Employees, Managers, Directors, Trustees Or Representatives Exclusion in the Commercial Crime Coverage Form and the Commercial Crime Policy; and

**b.** The Acts Committed By Your Officials, Employees Or Representatives Exclusion in the Government Crime Coverage Form and the Government Crime Policy.

**2.** The following exclusions are added:

This Insuring Agreement does not cover:

**a.** Loss resulting from errors or omissions in the design of "computer programs".

**b.** Loss resulting from errors or omissions in the programming or processing of "electronic data".

**C.** Under Section **F. Definitions,** the following is added to the definition of "occurrence":

**1.** As respects Paragraph **A.1.,** all covered costs incurred by you between the time the damage or destruction is discovered and the time your "computer system" is restored to the level of operational capability that existed immediately before the virus occurred. Recurrence of the same virus after your "computer system" has been restored shall constitute a separate occurrence.

**2.** As respects Paragraphs **A.2.** and **A.3.:**

**a.** An individual act or event;

**b.** The combined total of all separate acts or events whether or not related; or

**c.** A series of acts or events whether or not related;

committed by an "employee" or other person acting alone or in collusion with others, during the Policy Period shown in the Declarations, before such policy period or both.

POLICY NUMBER: BCCR-45003631-20

**CRIME AND FIDELITY**
**CR 20 04 10 10**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CHANGE EXTENDED PERIOD TO DISCOVER LOSS

This endorsement modifies insurance provided under the Discovery Form version of the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY
GOVERNMENT EMPLOYEE THEFT AND FORGERY POLICY

### SCHEDULE

| | |
|---|---|
| **Number Of Days:**   30 | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

The Extended Period To Discover Loss Condition is changed by adding to the 60-day period to "discover" loss the number of days shown in the Schedule.

However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not the other insurance provides coverage for loss sustained prior to its effective date.

With regard to any "employee benefit plans" (covered under the Commercial Crime Coverage Form, Commercial Crime Policy or Employee Theft And Forgery Policy), the one-year period to "discover" loss remains unchanged.

POLICY NUMBER: BCCR-45003631-20

**CRIME AND FIDELITY**
**CR 20 26 08 07**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PROVIDE AUTOMATIC COVERAGE FOR
# ACQUIRED ENTITIES

This endorsement modifies insurance provided under the **Discovery** version of the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY

### SCHEDULE

| | |
|---|---|
| **Percentage Of Total Assets:** | **15%** |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The **Consolidation – Merger Or Acquisition** Condition is replaced by the following:

**a.** Except as provided in Paragraph **b.** If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

**(1)** You must give us written notice and obtain our written consent to extend the coverage provided by this coverage form/policy to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

**(2)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this coverage form/policy shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided, that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities must occur after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

**b.** For entities you acquire in which you own greater than 50% of the voting stock or voting rights, coverage under this coverage form/policy shall automatically become effective on the date of such acquisition with no additional premium required, provided:

**(1)** All "occurrence" causing or contributing to a loss involving the acquired entity must take place after the effective date of such acquisition; and

**(2)** The assets of the acquired entity do not exceed the percentage shown in the Schedule of your total assets as reflected in your most recent calendar quarter consolidated financial statements immediately preceding the effective date of the coverage form/policy.

 © ISO Properties, Inc., 2006 ☐

POLICY NUMBER: BCCR-45003631-20

**CRIME AND FIDELITY**
**CR 25 08 10 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INCLUDE SPECIFIED NON-COMPENSATED OFFICERS AS EMPLOYEES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY
GOVERNMENT EMPLOYEE THEFT AND FORGERY POLICY

**SCHEDULE**

| Names Or Titles Of Non-compensated Officers |
|---|
| All |
| |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The definition of "employee" is amended to include your non-compensated officers shown in the Schedule.

POLICY NUMBER: BCCR-45003631-20

**CRIME AND FIDELITY**
**CR 25 20 10 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADD CREDIT, DEBIT OR CHARGE CARD FORGERY

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY
GOVERNMENT EMPLOYEE THEFT AND FORGERY POLICY

and applies to the Forgery Or Alteration Insuring Agreement:

**SCHEDULE**

| Limit Of Insurance | Covered Instruments | |
|---|---|---|
| $ 1,000,000 | [X] | Includes written instruments required in conjunction with any credit, debit or charge card issued to you or any "employee" for business purposes |
| | [ ] | Limited to written instruments required in conjunction with any credit, debit or charge card issued to you or any "employee" for business purposes |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

1. Covered Instruments either includes or is limited to, whichever is indicated as applicable in the Schedule, written instruments required in conjunction with any credit, debit or charge card issued to you or any "employee" for business purposes.

2. The most we will pay in any one "occurrence" is the Limit Of Insurance shown in the Schedule.

3. The following exclusion is added to Section **D.:**

   The Forgery Or Alteration Insuring Agreement does not apply to:

   **Non-compliance With Credit, Debit Or Charge Card Issuer's Requirements**

   Loss arising from any credit, debit or charge card if you have not complied fully with the provisions, conditions or other terms under which the card was issued.

© Insurance Services Office, Inc., 2009             ☐

POLICY NUMBER: BCCR-45003631-20

**CRIME AND FIDELITY**
**CR 25 41 10 10**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# INCLUDE DESIGNATED PERSONS OR CLASSES OF PERSONS AS EMPLOYEES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY
GOVERNMENT EMPLOYEE THEFT AND FORGERY POLICY

and applies to the Employee Theft Insuring Agreement:

### SCHEDULE

| Persons Or Classes Of Persons |
|---|
| Employees on military leave of absence |
|  |
|  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The definition of "employee" is amended to include any natural person or group of persons named or described in the Schedule.

POLICY NUMBER: BCCR-45003631-20                                    **BCR ISO 01 10 16**
NAMED INSURED:  Financial Business Group                           ENDORSEMENT #: 9
Holdings
EFFECTIVE DATE: 07/01/2019                                         EXPIRATION DATE: 07/01/2020
DATE OF ISSUANCE: 07/03/2019

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# <u>OMNIBUS NAMED INSURED ENDORSEMENT</u>

The Named Insured is amended to include:

1.      Any entity which is subject to control by you by reason of operation of such entity through voting control or by written contract.

2.      Any entity which is subject to control by you by reason of an ownership interest in such entity in excess of 50%.

3.      Any entity in which you have an ownership interest of 50% or less:

   a.      if you are legally liable for loss sustained by the entity; or

   b.      but only up to the proportion that your ownership interest in the entity bears to the total interest of all owners, if you are not legally liable for loss sustained by the entity.

4.      Any "employee benefit plan", sponsored or approved by you, that is required to be bonded under the Employee Retirement Income Security Act of 1974 and any amendments thereto.

All other terms, conditions, limitations and exclusions remain unchanged.

POLICY NUMBER: BCCR-45003631-20
NAMED INSURED:  Financial Business Group
Holdings
EFFECTIVE DATE: 07/01/2019
DATE OF ISSUANCE: 07/03/2019

**BCR ISO 03 10 16**
ENDORSEMENT #: 10

EXPIRATION DATE: 07/01/2020

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# <u>EXCLUDE TRADING LOSS WITH CARVE BACK FOR EMPLOYEE DISHONESTY</u>

Commercial Crime Policy Section D.2.b. is deleted and replaced with the following:

b.    **Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account, however, this exclusion shall not apply to direct loss caused by "Employee Dishonesty".

Section F. is amended to include the following:

23.    "Employee dishonesty" means dishonest acts committed by an "employee," whether identified or not, acting alone or in collusion with other persons, except you or your partner, with the manifest intent to:

a.    cause you to sustain a loss; and also

b.    obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing, or pensions) for:

(1)    the "employee"; or

(2)    any person or organization intended by the "employee" to receive the benefit.

All other terms, conditions, limitations and exclusions remain unchanged.

Government Crime Policy Section D.2.c. is deleted and replaced with the following:

c.    **Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account, however, this exclusion shall not apply to direct loss caused by "Employee Dishonesty".

Section F. is amended to include the following:

23.    "Employee dishonesty" means dishonest acts committed by an "employee," whether identified or not, acting alone or in collusion with other persons, except you or your partner, with the manifest intent to:

a.    cause you to sustain a loss; and also

      b.    obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing, or pensions) for:

           (1)    the "employee"; or

           (2)    any person or organization intended by the "employee" to receive the benefit.

All other terms, conditions, limitations and exclusions remain unchanged.

POLICY NUMBER: BCCR-45003631-20
NAMED INSURED:  Financial Business Group
Holdings
EFFECTIVE DATE: 07/01/2019
DATE OF ISSUANCE: 07/03/2019

**BCR ISO 04 10 16**
ENDORSEMENT #: 11

EXPIRATION DATE: 07/01/2020

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# <u>KNOWLEDGE OF PRIOR THEFT ENDORSEMENT</u>

Section D.1.b is deleted and replaced with the following:

b.      **Acts Committed by your Employees Learned Of By You Prior to the Policy Period**

Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act in excess of $10,000 prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

All other terms, conditions, limitations and exclusions remain unchanged.

POLICY NUMBER: BCCR-45003631-20                                    **BCR ISO 05 10 16**
NAMED INSURED:  Financial Business Group                           ENDORSEMENT #: 12
Holdings
EFFECTIVE DATE: 07/01/2019                                         EXPIRATION DATE: 07/01/2020
DATE OF ISSUANCE: 07/03/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INVENTORY SHORTAGE CLARIFICATION ENDORSEMENT

Section D.4.e. is amended to include the following:

> However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

All other terms, conditions, limitations and exclusions remain unchanged.

POLICY NUMBER: BCCR-45003631-20
NAMED INSURED:  Financial Business Group
Holdings
EFFECTIVE DATE: 07/01/2019
DATE OF ISSUANCE: 07/03/2019

**BCR ISO 06 10 16**
ENDORSEMENT #: 13

EXPIRATION DATE: 07/01/2020

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS REPORTING THRESHOLD ENDORSEMENT

In the Commercial Crime Policy the first sentence of Section E.1.g is deleted and replaced with the following:

> After you "discover" a loss or situation that may result in a loss of or damage to "money", "securities" or "other property" that is likely to exceed 50% of the applicable deductible you must:

All other terms, conditions, limitations and exclusions remain unchanged.

In the Government Crime Policy the first sentence of Section E.1.f is deleted and replaced with the following:

> After you "discover" a loss or situation that may result in a loss of or damage to "money", "securities" or "other property" that is likely to exceed 50% of the applicable deductible you must:

All other terms, conditions, limitations and exclusions remain unchanged.

POLICY NUMBER: BCCR-45003631-20                                  **BCR ISO 07 10 16**
NAMED INSURED:  Financial Business Group                          ENDORSEMENT #: 14
Holdings
EFFECTIVE DATE: 07/01/2019                               EXPIRATION DATE: 07/01/2020
DATE OF ISSUANCE: 07/03/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMEND NOTICE OF CANCELLATION ENDORSEMENT

Section E.1.b.(2)(b) is deleted and replaced with the following:

(b)        90 days before the effective date of cancellation if cancelled for any other reason.

All other terms, conditions, limitations and exclusions remain unchanged.

POLICY NUMBER: BCCR-45003631-20
NAMED INSURED:  Financial Business Group
Holdings
EFFECTIVE DATE: 07/01/2019
DATE OF ISSUANCE: 07/03/2019

**BCR ISO 08 10 16**
ENDORSEMENT #: 15

EXPIRATION DATE: 07/01/2020

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# <u>AMEND TERMINATION AS TO ANY EMPLOYEE ENDORSEMENT</u>

Commercial Crime Policy Section E.2.a.(2) is deleted and replaced with the following:
Government Crime Policy Section E.2.b.(2) is deleted and replaced with the following:

(2)     On the date specified in a notice mailed to the first Named Insured.  That date will be at least 90 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us.  If notice is mailed, proof of mailing will be sufficient proof of notice.

All other terms, conditions, limitations and exclusions remain unchanged.

POLICY NUMBER: BCCR-45003631-20　　　　　　　　　　　**BCR ISO 09 10 16**
NAMED INSURED:  Financial Business Group　　　　　　　ENDORSEMENT #: 16
Holdings
EFFECTIVE DATE: 07/01/2019　　　　　　　　　　　　　EXPIRATION DATE: 07/01/2020
DATE OF ISSUANCE: 07/03/2019

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# <u>AMEND DEFINITION OF DISCOVER ENDORSEMENT</u>

Section F.5. is deleted and replaced with the following:

5.　　"Discover" or "discovered" means the time when the Risk Management, Corporate Legal, Internal Audit and/or Human Resource Department first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

　　　　"Discover" or "discovered" also means the time when the Risk Management, Corporate Legal, Internal Audit and/or Human Resource Department first received notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this policy.

All other terms, conditions, limitations and exclusions remain unchanged.

POLICY NUMBER: BCCR-45003631-20
NAMED INSURED:  Financial Business Group
Holdings
EFFECTIVE DATE: 07/01/2019
DATE OF ISSUANCE: 07/03/2019

**BCR ISO 10 10 16**
ENDORSEMENT #: 17

EXPIRATION DATE: 07/01/2020

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# <u>AMEND DEFINITION OF SECURITIES ENDORSEMENT</u>

The first sentence of Commercial Crime Policy Section F.22 is deleted and replaced with the following:

22.    "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes but is not limited to:

All other terms, conditions, limitations and exclusions remain unchanged.

The first sentence of Government Crime Policy Section F. 19 is deleted and replaced with the following:

19.    "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes but is not limited to:

All other terms, conditions, limitations and exclusions remain unchanged.

POLICY NUMBER: BCCR-45003631-20                     **BCR ISO 11 10 16**
NAMED INSURED:  Financial Business Group            ENDORSEMENT #: 18
Holdings
EFFECTIVE DATE: 07/01/2019                          EXPIRATION DATE: 07/01/2020
DATE OF ISSUANCE: 07/03/2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMEND DEFINITION OF EMPLOYEE FOR TERMINATED EMPLOYEES ENDORSEMENT

Section F.7.a.(1) (a)  is amended by deleting 30 days and replacing it with 60 days.

All other terms, conditions, limitations and exclusions remain unchanged.

POLICY NUMBER: BCCR-45003631-20                                          **BCR ISO 12 10 16**
NAMED INSURED:  Financial Business Group                                 ENDORSEMENT #: 19
Holdings
EFFECTIVE DATE: 07/01/2019                                              EXPIRATION DATE: 07/01/2020
DATE OF ISSUANCE: 07/03/2019

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TAX COMPENSATION COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that the Company shall adjust the amount of any loss paid in the United States to compensate for additional federal or state tax liability incurred by the Insured as a result of the payment of such loss in the United States rather than in the country in which such loss was sustained, provided that:

a.   The loss was sustained by an entity not subject to United States or state tax provisions; and

b.   The payment for such loss is reportable income under the Internal Revenue Code and regulations or the tax laws of any state or commonwealth of the United States.

Loss payment shall be adjusted using the following formula:

**Final payment =**
**Loss Payment times**     **One minus the Marginal Foreign Tax Rate**
                          **One minus the Sum of the Marginal United**
                          **States and State Tax Rates**

Definitions

**Final Payment** means the amount paid after the tax adjustment described in this endorsement.

**Loss payment** means the amount to be paid prior to the tax adjustment described in this endorsement.

**Marginal Foreign Tax Rate** means the marginal rate of income taxation of the insured entity which sustained the loss for the tax year in which such loss is written off.

**Marginal United States and State Tax Rates** means the marginal rates of Federal and State income taxation of the Insured which pays the loss in the United States for the tax year in which such loss is written off and shall include, if any, foreign tax credits accruing as a result of such loss.

Conditions

1.   Nothing contained in this endorsement shall be construed to increase our liability above the amount set forth in the Limits of Liability.
2.   Nothing contained in this endorsement shall be construed to decrease our liability below the original amount of loss payment.
3.   You shall cooperate with any attempt by us to pay the loss directly to the entity sustaining the loss.

All other terms, conditions, limitations and exclusions remain unchanged.

**BCR ISO 12 10 16**                                                     **Page 1 of 1**    ☐

POLICY NUMBER: BCCR-45003631-20          **BCR ISO 13 10 16**
NAMED INSURED:  Financial Business Group          ENDORSEMENT #: 20
Holdings
EFFECTIVE DATE: 07/01/2019          EXPIRATION DATE: 07/01/2020
DATE OF ISSUANCE: 07/03/2019

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# <u>INVESTIGATIVE COSTS ENDORSEMENT</u>

The Company shall reimburse the Insured for "investigative costs" of the Insured on any paid claim up to a limit of $50,000.

"Investigative costs" means reasonable expenses incurred by you in establishing the existence and amount of any direct loss covered in excess of the deductible amount of this policy, as stated in the Declarations.  The reasonableness of such expenses shall be determined by us and shall not include any of your internal corporate obligations, such as employee wages or internal costs.

All other terms, conditions, limitations and exclusions remain unchanged.

POLICY NUMBER: BCCR-45003631-20                                    **BCR ISO 14 10 16**
NAMED INSURED:  Financial Business Group                          ENDORSEMENT #: 21
Holdings
EFFECTIVE DATE: 07/01/2019                                        EXPIRATION DATE: 07/01/2020
DATE OF ISSUANCE: 07/03/2019

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# <u>PROOF OF LOSS ENDORSEMENT</u>

Commercial Crime Policy Section E.1.g.(2) is deleted and replaced with the following:
Government Crime Policy Section E.1.f.(2) is deleted and replaced with the following:

(2)      Give us a detailed, sworn proof of loss within 180 days.

All other terms, conditions, limitations and exclusions remain unchanged.

POLICY NUMBER: BCCR-45003631-20                    **BCR ISO 20 10 16**
NAMED INSURED:  Financial Business Group            ENDORSEMENT #: 22
Holdings
EFFECTIVE DATE: 07/01/2019                          EXPIRATION DATE: 07/01/2020
DATE OF ISSUANCE: 07/03/2019

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CORPORATE DECEPTION FRAUD ENDORSEMENT

With regard to this Corporate Deception Fraud Endorsement, the provisions of the policy to which this endorsement is attached apply unless modified by this endorsement.  In consideration of the premium charged, the following changes are made to the policy.

I.    It is agreed the following insuring agreement is added to Section A. Insuring Agreements:

**Corporate Deception Fraud**
We will pay for loss resulting directly from you having transferred, paid or delivered any "money" or "securities" as the direct result of "Corporate Deception Fraud" committed by a person purporting to be:
   a)  a "vendor",
   b)  a "customer", or
   c)  an "employee", "manager", "member" or any of your partners who was authorized by you to instruct other "employees" to transfer "money" and "securities".

II.   The Corporate Deception Fraud Limit of Insurance and Deductible are shown on the Declarations page.

III.  Section F. Definitions is amended to include the following:

"Customer" means any entity or natural person to which you provide goods or services under a written contract.

"Corporate Deception Fraud" means the intentional misleading of an "employee", through fraudulent misrepresentation of a material fact which is relied upon by an "employee", believing it to be genuine.

"Vendor" means any entity or natural person that has provided goods or services to you under a legitimate pre-existing arrangement or written agreement.  However, vendor does not include any financial institution, asset manager, broker-dealer, armored motor vehicle company, or any similar entity.

IV.   It is agreed Section D. Exclusions of the policy is amended by adding the following:

5. The Corporate Deception Fraud insuring agreement does not cover:

   a.  Loss or damage covered under Insuring Agreements A.1, A.2, A.3, A.4, A.5, A.6, A.7 or any other insuring agreements added to this policy by endorsement:
   b.  Loss or damage resulting from any investments in "securities" or ownership in any corporation, partnership, real property, or similar instrument, whether or not such investment is genuine.
   c.  Loss or damage resulting from the failure, malfunction, inadequacy, or illegitimacy of any product or service, including in the advertisement or labeling thereof.
   d.  Loss or damage resulting from the failure of any party to perform, in whole or in part, under a contract.
   e.  Loss or damage resulting from gambling, game of chance, lottery or similar games.

f.  Loss or damage resulting from any party's use or acceptance of any credit card, debit card, or similar instrument, whether or not genuine.

g.  Loss of or damage to any "other property".

h.  Loss or damage resulting directly or indirectly due to the extension of any loan, credit or similar promise to pay.

i.  Loss or damage to "money" or "securities" while in the mail or in the custody of any "messenger " or carrier for hire, including but not limited to any armored motor vehicle company.

j.  Loss of or damage to "money" or "securities" resulting directly from disappearance or destruction while inside the "premises" or "financial institution premises".

V.  The policy does not cover loss resulting from "Corporate Deception Fraud" except when covered under the Corporate Deception Fraud Insuring Agreement.

VI.  Insuring Agreements A.2. and A.6. do not cover:

**Voluntary Parting of Title To Or Possession of "Money", "Securities" and/or "other property"**
Loss resulting from your, or anyone acting on your express or implied authority, being induced by any fraudulent or dishonest act to voluntarily part with title to or possession of any "money", "securities" and/or "other property", except as specified in Insuring Agreement A.6.b.

All other terms, conditions, limitations and exclusions remain unchanged.

POLICY NUMBER: BCCR-45003631-20
NAMED INSURED:  Financial Business Group
Holdings
EFFECTIVE DATE: 07/01/2019
DATE OF ISSUANCE: 07/03/2019

**BCR CGV 24 01 15**
ENDORSEMENT #: 23

EXPIRATION DATE: 07/01/2020

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# <u>NO CLAIMS BONUS ENDORSEMENT</u>

At the end of the policy period, the Insured will be due a No Claims Bonus return premium of  5% of the annual premium.  This return premium is subject to no claims being paid or outstanding for this Insured and the renewal of this Insured by the Company.

All other terms, conditions, limitations and exclusions remain unchanged.

CRIME AND FIDELITY
CR 02 49 09 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME POLICY
GOVERNMENT EMPLOYEE THEFT AND FORGERY POLICY
KIDNAP/RANSOM AND EXTORTION POLICY

Paragraphs **A.** and **B.** apply only to the Commercial Crime Policy, Government Crime Policy and Kidnap/Ransom And Extortion Policy.

**A.** Paragraphs **(2)** and **(3)** of the **Cancellation Of Policy** Condition are replaced by the following:

**(2) All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for:

**(i)** Nonpayment of premium; or

**(ii)** Discovery of fraud by:

**i.** Any insured or his or her representative in obtaining this policy; or

**ii.** You or your representative in pursuing a claim under this policy.

**(b)** 30 days before the effective date of cancellation if we cancel for any other reason.

**(3) All Policies In Effect For More Than 60 Days**

**(a)** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(i)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(ii)** Discovery of fraud or material misrepresentation by:

**i.** Any insured or his or her representative in obtaining this policy; or

**ii.** You or your representative in pursuing a claim under this policy.

**(iii)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(iv)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

© Insurance Services Office, Inc., 2012

**(v)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(vi)** A determination by the Commissioner of Insurance that the:

   **i.** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

   **ii.** Continuation of the policy coverage would:

     **i** Place us in violation of California law or the laws of the state where we are domiciled; or

     **ii** Threaten our solvency.

**(vii)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**(b)** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

   **(i)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

   **(ii)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **(3)(a).**

**B.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

   **1.** Subject to the provisions of Paragraph **B.2.,** if we elect not to renew this policy, we will mail or deliver written notice, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

     We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

   **2.** We are not required to send notice of nonrenewal in the following situations:

     **a.** If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between us and a member of our insurance group.

     **b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **B.1.**

     **c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

     **d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

     **e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

     **f.** If we have made a written offer to the first Named Insured, in accordance with the time frames shown in Paragraph **B.1.,** to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

**C.** Under the Commercial Crime Policy, Government Crime Policy and Employee Theft And Forgery Policy, the following is added to the **Valuation – Settlement** Condition:

Actual cash value is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of covered property, regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

CRIME AND FIDELITY
CR 25 47 09 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# U.S. DEPARTMENT OF LABOR – ERISA PLAN COVERAGE AMENDMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY

With regard to coverage provided for "employee benefit plans", the provisions of the Coverage Form or Policy to which this endorsement is attached apply, unless modified by this endorsement.

**A.** Under Section **D. Exclusions:**

**1.** In Section **D.1.:**

**a.** The **Acts Committed By You, Your Partners Or Your Members** Exclusion is replaced by the following:

**Acts Committed By You, Your Partners Or Your Members**

Loss resulting from "theft" or any other dishonest or fraudulent act committed by:

**(1)** You; or

**(2)** Any of your partners or "members";

whether acting alone or in collusion with other persons, except while handling "money", "securities" or "other property" of an "employee benefit plan".

**b.** The **Confidential Or Personal Information** Exclusion is replaced by the following:

**Confidential Or Personal Information**

Loss resulting from:

**(1)** The disclosure or use of another person's or organization's confidential or personal information, except as provided in Paragraph **(2)**.

**(2)** The disclosure of your or an "employee benefit plan" participant's confidential or personal information. However, this Paragraph **(2)** does not apply to loss otherwise covered under Insuring Agreement **A.1.** that results directly from the use of your or an "employee benefit plan" participant's confidential or personal information.

For the purposes of this exclusion, confidential or personal information includes, but is not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, retirement or health savings account information or any other type of nonpublic information.

**2.** In Section **D.2.:**

**a.** The **Trading** Exclusion is deleted.

**b.** The **Warehouse Receipts** Exclusion is deleted.

**B.** Paragraph **(2)** of the **Employee Benefit Plans** Condition is replaced by the following:

**(2)** With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee" whether identified or not, sole proprietor, partner or "member" acting alone or in collusion with other persons while such "employee", sole proprietor, partner or "member" is handling "money", "securities" or "other property" of an "employee benefit plan".

**C.** Paragraph **a.** of the definition of "occurrence" is replaced by the following:

**a.** Under Insuring Agreement **A.1.:**

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

© Insurance Services Office, Inc., 2017

committed by an "employee", sole proprietor, partner or "member" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

© Insurance Services Office, Inc., 2017





Berkley Crime

29 South Main Street, 3rd FL  |  West Hartford, CT 06107  |  844.44.CRIME

Berkleycrime.com